884 N.E.2d 889 (2008)
Robert SEXTON, Melinda Sexton, Stephanie Flinn, Craig Flinn, David Helt, Gail Helt, Jerry Marsh, Hazel Marsh, Steve Bowman, and Celeste Bowman, Appellants-Petitioners,
v.
JACKSON COUNTY BOARD OF ZONING APPEALS and Jerry D. Otte, Thomas Bryant, Ken Turner, Gene Speaker, and Francis Elliot, in their capacity as members of The Jackson County Board of Zoning Appeals, Appellees-Respondents, and,
Talara Lykins, Intervenor-Appellee.
No. 36A01-0706-CV-258.
Court of Appeals of Indiana.
April 18, 2008.
*891 Peter Campbell King, Tamara B. Wilson, Cline King & King, P.C., Columbus, IN, Attorneys for Appellant.
Joseph A. Miller, Tally Lykins, Seymour, IN, Attorneys for Appellee, Talara Lykins.
John F. Rothring Seymour, IN, Attorney for Appellee, Jackson County Board of Zoning Appeals.

OPINION
BARNES, Judge.

Case Summary
Robert and Melinda Sexton, Stephanie and Craig Flinn, David and Gail Helt, Jerry and Hazel Marsh, and Steve and Celeste Bowman (collectively "the Appellants") appeal the trial court's decision denying their petition for writ of certiorari. We reverse and remand.

Issues[1]
The Appellants raise several issues. We address the following two dispositive issues:
I. whether the trial court properly determined that the Appellants did not have standing to petition for the writ of certiorari; and
II. whether the trial court abused its discretion in determining that no violation of the Indiana Open Door Law ("IODL") occurred.

Facts
On July 18, 2005, Talara Lykins applied to the Jackson County Board of Zoning Appeals ("BZA") for a special exception to build and operate a concentrated animal feeding operation ("CAFO"). Lykins requested approval to house 8,000 hogs on her ten-acre parcel. On October 11, 2005, the BZA held a hearing on her application in a school gymnasium to accommodate a large crowd. Lykins presented evidence in support of her application and several neighbors, including the Appellants, made statements in opposition to the application. The Appellants explained that they lived near the site of the proposed CAFO, ranging from 1200 feet away to a half a mile away.
Although one of the BZA members requested time to review the evidentiary material they had received from Lykins, the other members moved to vote on the application at that time. The vote resulted in a two to two tie. After the tie vote, in front of the crowd, the four BZA members then began talking. The BZA members' twenty-two minute conversation was not recorded. The BZA held another vote and *892 Lykins's application was approved by a vote of three to one.
On November 9, 2005, the Appellants petitioned for a writ of certiorari and on November 18, 2005, they filed an amended petition for a writ of certiorari. On July 10, 2006, the trial court issued a writ of certiorari as to the original petition and struck the amended petition.
On November 27, 2006, the Appellants moved to supplement the record with a video of the October 11, 2005 BZA hearing, an advisory opinion from the Indiana Public Access Counselor, and a letter from the Jackson County Council notifying a BZA member that his appointment to the BZA had been revoked. On December 15, 2006, the trial court granted the motion to supplement the record. On December 21, 2006, Lykins, as intervenor, filed a motion for the trial court to reconsider its permission for the Appellants to supplement the record. The trial court granted Lykins's motion and struck the Appellants' supplemental record.
On May 9, 2007, the trial court denied the petition for writ of certiorari because the Appellants lacked standing. The trial court also concluded that the BZA did not violate the IODL. The Appellants now appeal.

Analysis

I. Standing[2]
The Appellants contend the trial court improperly denied their petition for writ of certiorari. Pursuant to Indiana Code Section 4-21.5-5-14, a court reviewing an agency action may provide relief only if the action is: (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) contrary to constitutional right, power, privilege, or immunity; (3) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (4) without observance of procedure required by law; or (5) unsupported by substantial evidence. Equicor Dev., Inc. v. Westfield-Washington Tivp. Plan Comm'n, 758 N.E.2d 34, 36 (Ind.2001). In reviewing an administrative decision, we do not try the facts de novo or substitute our own judgment for that of the agency. Id. at 37 (citing Ind.Code § 4-21.5-5-11). "This statutory standard mirrors the standard long followed by this Court." Id. "On appeal, to the extent the trial court's factual findings were based on *893 a paper record, this Court conducts its own de novo review of the record." Id.
At issue is whether the Appellants have standing to challenge the BZA's decision. "A person must be `aggrieved' by a board of zoning appeals's decision in order to have standing to seek judicial review of that decision." Bagnall v. Town of Beverly Shores, 726 N.E.2d 782, 786 (Ind.2000) (citing I.C. § 36-7-4-1003(a)). To be aggrieved, the Appellants must experience a substantial grievance, a denial of some personal or property right, or the imposition of a burden or obligation. See id. Generally, the BZA's decision must infringe upon a legal right of the petitioner that will be enlarged or diminished by the result of the appeal and the petitioner's resulting injury must be pecuniary in nature. Id. The Appellants must show some special injury other than that sustained by the community as a whole. See id.
The parties cite to Bagnall in an effort to show that the Appellants do or do not have standing. In that case, three fifty-foot lots separated the property that was granted a variance by the BZA and the property owned by the Bagnalls. Id. Our supreme court concluded that the Bagnalls did not demonstrate that they had standing because they presented nothing in their petition nor did they enter any evidence in the record to suggest that the variance would result in an infringement of a legal right resulting in pecuniary injury or a special injury beyond that sustained by the entire community as required. Id.
We conclude that the facts in Bagnall are of little guidance here because the potential harm is considerably different from that in Bagnall even though the distance between the Appellants' properties and Lykins's is significantly more than the 150 feet at issue in Bagnall. The Bagnalls objected to the granting of a setback variance for property three lots away from theirs. Here, the issue is the operation of an 8,000 hog CAFO  the odors associated with such an operation alone presents a much different set of facts than the setback variance.
More important, however, is that unlike the Bagnalls, the Appellants presented evidence that they would suffer a pecuniary loss if Lykins's application was granted. At the BZA hearing, Richard Brackemeyer testified that he was the township assessor for the past twelve years and that he had looked at every parcel in the township. Brackemeyer testified:
The first thing that has to happen if this hog operation goes in, is the neighborhood value will have to be lowered from a good to a fair or a poor. . . . [T]here's some houses like Flynns [sic], Bowmans and Jerry Marsh's, David Helt's there's some of them that the Sexton's house, there's two of them there that are pretty new houses, Steve Bowman's sister just built a new house up there. I wouldn't be surprised if they wouldn't drop 30 percent, I don't think it would be out of the question. So the property values will decrease in this area.
App. pp. 853-54. Unlike in Bagnall, where the allegedly aggrieved party presented no evidence of harm, the Appellants have presented evidence showing that the value of their property will decrease if the CAFO is constructed.
Lykins argues that she presented "factual information" of home sales near similarly situated CAFO's. Appellees' Br. p. 20. Lykins cites her attorney's argument at the October 11, 2005 hearing in which he stated:
I have checked, there has not been a study done any place in the Nation on the affect on housing values. . . . What I did include though are, these are homes here around existing facilities similar to *894 this, it shows what they, the asking price and what they actually sold for. That kind of gives you an idea the affect these facilities have on a house, which is, as you can see by the listing prices and the sold price, had virtually no affect.
App. pp. 763-64. This statement, taken at face value, only establishes that the properties to which counsel refers sold for the asking price; it does not establish that the property values did not decrease prior to their listing. Moreover, this statement does not address the value of Appellants' properties, which is essential in determining whether the Appellants have standing based on a specific pecuniary injury that they will suffer.
We conclude that the proximity of the Appellants' properties to the alleged harm is not dispositive in determining whether they have standing. The Appellants presented evidence showing that they will suffer a pecuniary loss by the granting of Lykins's permit. This is sufficient to show that they are "aggrieved" and therefore sufficient to establish that they have standing to petition for a writ of certiorari. The trial court's findings and conclusions to the contrary are clearly erroneous.
Although the trial court concluded that the Appellants did not have standing, it appears to have analyzed whether there is sufficient evidence to support the BZA's approval of Lykins's application and concluded that there was sufficient evidence to support the BZA's decision. This analysis, however, did not address all of the Appellants' claims. Based on our conclusion today, we remand for consideration, or reconsideration as the case may be, of the claims in the Appellants' petition for writ of certiorari in light of the fact that they have standing to pursue the claims.

II. Indiana Open Door Law[3]
The Appellants also argue that the trial court improperly failed to consider supplemental evidence relating to its IODL claim. Specifically, during the October 11, 2005 BZA hearing, approximately twenty-two minutes are not included in the transcript after the first vote but before the second vote. The Appellants allege that during this time, the four BZA members "deliberated, in whispering tones out of earshot of the public and their recording equipment." Appellants' Br. p. 24. In their petition, the Appellants alleged that this action was in violation of IODL.
The IODL provides, "Except as provided in section 6.1 of this chapter, all meetings of the governing bodies of public agencies must be open at all times for the purpose of permitting members of the public to observe and record them." Ind. Code § 5-14-1.5-3(a).[4] Further:
In enacting this chapter, the general assembly finds and declares that this state and its political subdivisions exist only to aid in the conduct of the business of the people of this state. It is the intent of this chapter that the official action of public agencies be conducted and taken openly, unless otherwise expressly provided by statute, in order *895 that the people may be fully informed. The purposes of this chapter are remedial, and its provisions are to be liberally construed with the view of carrying out its policy.
I.C. § 5-14-1.5-1. The parties agree that the IODL applies to the October 11, 2005 BZA hearing. They disagree as to whether the BZA violated the IODL.
We cannot resolve this question, however, because the Appellants were not permitted to supplement the record. During the trial court proceedings, the Appellants sought to supplement the record with a videotape of the October 11, 2005 hearing, an advisory opinion for the Indiana Public Access Counselor, and a letter from the Jackson County Council notifying a BZA member that his appointment to the BZA had been revoked. The trial court ultimately struck the supplemental evidence and concluded that no IODL violation occurred.
Concerning the evidence considered by a trial court during certiorari proceedings:
The court may determine the sufficiency of the statements of illegality contained in the petition, without further pleadings, and may make its determination and render its judgment with reference to the legality of the decision of the board of zoning appeals, on the facts set out in the return to the writ of certiorari. If the court determines that testimony is necessary for the proper disposition of the matter, it may take evidence to supplement the evidence and facts disclosed by the return to the unit of certiorari, but the review may not be by trial de novo. . . .
I.C. § 36-7-4-1009 (emphasis added). In the context of this statute, our supreme court has observed that "supplemental" is defined as "`that which is added to a thing to complete it.'" Metro. Bd. of Zoning Appeals v. Gateway Corp., 256 Ind. 326, 336, 268 N.E.2d 736, 742 (1971). Said another way, "the trial court may permit additional evidence so long as it confines such evidence to subjects covered in the hearing before the zoning board." Newman v. Spence, 565 N.E.2d 350, 355 (Ind. Ct.App.1991).
Although the trial court was not required to consider supplemental evidence, it should have done so here. At issue is the conduct of the BZA members during the hearing  certainly the Appellants should have been able to supplement the record with evidence of what happened during the hearing. Further, Lykins and the BZA's arguments against the supplementation of the record go to the weight of the evidence, not to whether the record should be supplemented.
To be clear, we are not addressing the merits of the Appellants' claim; we are simply stating that a party alleging an IODL violation should have an opportunity to establish a record in support of the claim. Such an approach allows for the liberal construction of the IODL and creates a record of the evidence the parties submitted to the trial court and the trial court's evidentiary rulings on them. Thus, we remand for the trial court to consider evidence submitted by the parties on the Appellants' IODL claim, to determine the admissibility of the supplemental evidence, and to reconsider the merits of the claim in light of the supplemental evidence.

Conclusion
The Appellants are aggrieved by the BZA's decision and have standing to petition for a writ of certiorari. The trial court improperly failed to supplement the record regarding the Appellants' IODL claim. Accordingly, we reverse and remand for the trial court to consider the *896 merits of the Appellants' claims in light of our decision. We reverse and remand.
Reversed and remanded.
MATHIAS, J., and VAIDIK, J., concur.
NOTES
[1] We do not address the Appellants' stated issue regarding their amended petition for writ of certiorari as they do not develop the argument in their brief and appear to concede that its inclusion in the statement of issues and summary of the argument was an oversight. See Appellants' Reply Br. p. 16.
[2] Lykins and the BZA argue that the Appellants' failure to name Lykins in the writ deprived the trial court of subject matter jurisdiction. She argues the notice she received from the Appellants as an adverse party was not sufficient. We disagree. Indiana Code Section 36-7-4-1005 provides in part:

(a) On filing a petition for a writ of certiorari with the clerk of the court, the petitioner for the writ of certiorari shall give notice of the petition as follows:
* * * * *
(2) If the petitioner is not the applicant for the use, special exception, or variance and is a person aggrieved by the decision of a board of zoning appeals as set forth in section 1003 of this chapter, the petitioner shall have a notice served by the sheriff of the county on:
(A) each applicant or petitioner for the use, special exception, or variance; and
(B) each owner of the property that is the subject of the application or petition for the use, special exception, or variance.
* * * * *
(d) An adverse party who is entitled to notice of a petition for writ of certiorari under subsection (a) is not required to be named as a party to the petition for writ of certiorari.
(Emphasis added). There is no argument that the Appellants failed to notify Lykins as required by Indiana Code Section 36-7-4-1005. We will not impose additional filing requirements where the legislature has expressly declined to do so.
[3] Although the parties refer in great detail to the specifics of the proposed supplemental evidence and the Appellants included it in their appendices, because it is not a part of the trial court's record, it is not available for our consideration regarding the merits of the Appellants' IODL claim. See AKJ Industries, Inc. v. Mercantile Nat. Bank, 779 N.E.2d 543, 545 (Ind.Ct.App.2002) ("Once evidence is stricken from the record, it may not be used to further support a party's legal argument."), trans. denied. Thus, the inclusion of the supplemental evidence is only relevant as it relates to the Appellants' argument that they should have been permitted to supplement the record.
[4] Indiana Code Section 5-14-1.5-6.1 describes "executive sessions."