

**FILED**

Aug 01 2018, 7:29 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

APPELLANT PRO SE

David L. Pflugh
Indianapolis, Indiana

ATTORNEY FOR APPELLEES
855 NORTH EAST STREET, LLC AND
PAUL VEZOLLES:

Jeffrey D. Stemerick
Taft Stettinius & Hollister LLP
Indianapolis, Indiana

ATTORNEY FOR APPELLEE
INDIANAPOLIS HISTORIC PRESERVATION
COMMISSION:

Thomas J.O. Moore
Office of Corporation Counsel
Indianapolis, Indiana

IN THE

# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| David Pflugh, *Appellant-Petitioner,* | August 1, 2018 |
| | Court of Appeals Case No. 18A-PL-351 |
| v. | Appeal from the Marion Superior Court |
| Indianapolis Historic Preservation Commission sitting as the Indianapolis Historic Preservation Commission and as the Board of Zoning Appeals Division of Marion County, Indiana, Neighborhood/ Downtown Zoning Assistance, Inc., 855 North East Street, LLC, and Paul Vezolles, *Appellees-Respondents.* | The Honorable Heather A. Welch, Judge |
| | Trial Court Cause No. 49D01-1706-PL-22291 |

**Friedlander, Senior Judge.**

[1] Paul Vezolles is a member of 855 North East Street, LLC (collectively "Vezolles"), which owns property at that address in Indianapolis ("the Site"). Prior to the Indianapolis Historical Preservation Commission ("IHPC") proceedings at issue, the Site was zoned SU-7, which only allows charitable, philanthropic, and not-for-profit use. The Site sits between north East Street and Park Avenue just south of 9th Street and is in the Chatham-Arch and Massachusetts Avenue Historic Preservation District. David Pflugh is an attorney who lives at 847 North Park Avenue, directly across Park Avenue from the northeast corner of the Site.

[2] The Site currently is occupied by a vacant nursery school building constructed in the 1970s and a single house at 812 North Park Avenue that was built in 1894. Across Park Avenue to the east are historic homes, across 9th Street to the north is the Chatham Center (which includes apartments and retail space, including a pet groomer, a hair salon, and a doctor's office), and across East Street to the west are the fifteen-story Lugar Towers apartments. The Chatham-Arch and Massachusetts Avenue Historic Area Preservation Plan ("the CAMA Plan"), adopted in 2006, designates the nursery school building as "Non-Contributing Non-Historic[.]" Appellees' App. Vol. 2, p. 142. The CAMA Plan has a site-specific recommendation for the Site that calls for D-8

zoning[1] with "higher density residential, such as town houses, along East St." and "lower density, single-family and two-family houses, along Park [Ave.]." *Id.* at 167.

[3]  On September 1, 2016, Vezolles petitioned the IHPC to rezone the Site from SU-7 to what was ultimately changed to D-8 to allow for a new development called Chatham Park (the "Project") to replace the vacant nursery school building. Vezolles proposed building seven single-family homes and two duplexes on the east side of the Site and two condominium buildings with a total of fifty-five units on the west side. Following is a site plan which provides an overview of the area and depicts how the Site would look once the Project is completed:

---

[1] D-8 zoning allows for single-family, two-family, and multifamily residential development.



Appellees' Br. p. 11.

[4] The IHPC held four public hearings on December 7, 2016; February 1, 2017; April 5, 2017; and May 3, 2017, at which concerned citizens, including Pflugh, testified. On May 3, 2017, the IHPC entered written findings approving the Project. Specifically, the IHPC rezoned the entire Site to D-8, granted a use

variance permitting a small commercial use in one corner of the Site, granted four development-standard variances, and issued a certificate of appropriateness ("COA"). The retail space is directly across 9th Street from similar retail space in Chatham Center and is 2400 square feet, and the use variance specifically excludes twenty-nine categories of commercial use that could be detrimental to the neighborhood. The zoning commitments include other restrictions, including hours restrictions and noise restrictions.

[5] In addition to the use variance for retail, the IHPC granted Vezolles four development-standard variances, allowing for less open space at the Site and reducing the livability-space ratio and floor-area ratio for the buildings to be built along East Street. Both variances are typically needed for residential development in downtown urban areas. Without the livability-ratio variance, the Site could not be developed with higher-density residential structures along East Street as called for in the CAMA Plan, and high-density residential development would likely be required along Park Avenue (directly across from Pflugh's house) where the CAMA Plan calls for single- and two-family dwellings.

[6] On June 2, 2017, Pflugh petitioned for judicial review of the grant of variances and the COA. Pflugh challenged the use variance, the development standard variance for less open space than required, the development standard variance for livability ratio, and the COA. On January 22, 2018, the trial court denied Pflugh's petition. The trial court concluded that Pflugh lacked standing to seek judicial review because Pflugh is not aggrieved by the IHPC's decision. The

trial court also concluded that even if Pflugh had standing, the IHPC's decision was not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; contrary to constitutional right, power, privilege, or immunity; in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; without observance of procedure required by law; or unsupported by substantial evidence." Appellees' App. Vol. 2, p. 30.

# 1. Whether Pflugh Has Standing to Challenge the IHPC's Decision

A trial court's decision dismissing a case for lack of standing is reviewed de novo. *Reed v. Plan Comm'n of Town of Munster*, 810 N.E.2d 1126 (Ind. Ct. App. 2004), *trans denied*. "Standing is a judicial doctrine that focuses on whether the complaining party is the proper party to invoke the trial court's jurisdiction." *Liberty Landowners Assoc., Inc. v. Porter Cty. Comm'rs*, 913 N.E.2d 1245, 1250 (Ind. Ct. App. 2009), *trans. denied*. Standing must thus be analyzed before the merits of the case because if a person has no standing, then the Court has no jurisdiction to determine the merits. *See id.*

Indiana Code section 36-7-4-1603(a) (2011) provides as follows:

> (a) The following have standing to obtain judicial review of a zoning decision:
>
>> (1) A person to whom the zoning decision is specifically directed.
>>
>> (2) A person aggrieved by the zoning decision who participated in the board hearing that led to the decision, either:

(A) by appearing at the hearing in person, by agent, or by attorney and presenting relevant evidence; or

(B) by filing with the board a written statement setting forth any facts or opinions relating to the decision.

(3) A person otherwise aggrieved or adversely affected by the zoning decision.

The IHPC's decision was not specifically directed at Pflugh, but he attended at least one hearing and presented evidence. Pflugh therefore falls under subsection (2), which requires that he be "aggrieved" to have standing to challenge the IHPC's decision.

[9] In *Bagnall v. Town of Beverly Shores*, 726 N.E.2d 782 (Ind. 2000), the Indiana Supreme Court concluded that "[t]o be aggrieved, the petitioner must experience a 'substantial grievance, a denial of some personal or property right or the imposition … of a burden or obligation.'" *Id*. at 786 (quoting *Union Twp. Residents Ass'n, Inc. v. Whitley Cty. Redev. Comm'n*, 536 N.E.2d 1044, 1045 (Ind. Ct. App. 1989)). "The board of zoning appeals's decision must infringe upon a legal right of the petitioner that will be 'enlarged or diminished by the result of the appeal' and the petitioner's resulting injury must be pecuniary in nature." *Id*. (quoting *Union Twp. Residents Ass'n*, 536 N.E.2d at 1045). A petitioner must also demonstrate a special injury not common to the community as a whole. *Id*. (citing *Robertson v. Bd. of Zoning Appeals*, 699 N.E.2d 310, 315 (Ind. Ct. App. 1998)).

[10] Pflugh seems to argue that his status as an adjoining property owner automatically renders him "aggrieved." While it is true that "[a]djoining or

surrounding landowners *may … be* persons 'aggrieved[,]'" *Stout v. Mercer*, 160 Ind. App. 454, 462, 312 N.E.2d 515, 520 (1974) (emphasis added), "proximity of the [petitioners'] properties to the alleged harm is not dispositive in determining whether they have standing." *Sexton v. Jackson Cty. Bd. of Zoning Appeals*, 884 N.E.2d 889, 894 (Ind. Ct. App. 2008). Pflugh apparently interprets the Indiana Supreme Court's opinion in *Bagnall* as setting forth the proposition that adjacent property owners are automatically aggrieved. A close reading of *Bagnall* indicates otherwise.

[11] Far from holding that adjacent property owners are automatically aggrieved, the *Bagnall* Court merely noted that the appellee conceded "that a sufficient legal interest is present in zoning cases if the petitioner owns property that is 'adjacent' to or 'surrounding' the subject property[,]" *Bagnall*, 726 N.E.2d at 786, which is not the same thing as explicitly adopting the proposition. Moreover, the Court did not reach the question of the aggrieved status of adjacent landowners such as Pflugh, as the property at issue in that case was not, in fact, adjacent to the rezoned property. Finally, after mentioning the concession, the Court reiterated that an aggrieved person must present evidence that the "zoning variance would result in infringement of a legal right resulting in *pecuniary injury* as required by [*Williams-Woodland Park Neighborhood Ass'n v. Bd. of Zoning Appeals of the City of Ft. Wayne*, 638 N.E.2d 1295, 1299 (Ind. Ct. App. 1994)], or *a special injury beyond that sustained by the entire community* as required by *Robertson*, 699 N.E.2d at 315." *Id*. (emphases added).

[12]     In short, Pflugh is not "aggrieved" simply because he lives next to the Site. Pursuant to *Bagnall*, Pflugh must show pecuniary or special injury, and the trial court specifically found that he had failed to do so:

> Even given the proximity of Pflugh's property to the Site on which the variances have been granted, Pflugh has not demonstrated the type of substantial grievance or pecuniary harm required to show he has been "aggrieved." With regard to the use variance, Pflugh complains there will be additional noise and traffic near his home, but does not direct this Court to any other harms. Our Indiana Court of Appeals has held that increased noise and traffic do not qualify as a "special injury" and thus additional noise and traffic is insufficient to confer standing as a matter of law. *Reed v. Plan Comm'n*, 810 N.E.2d 1126, 1128 (Ind. Ct. App. 2004). With regard to the development standard variances, Pflugh argues that "[i]t is foreseeable that [the variance] will put children in the street batting baseballs into Pflugh's yard because there is so little open space[.]" (Pflugh Reply Br. at 16.) Finally, with regard to the COA, Pflugh makes no argument that he is harmed by its issuance.

Appellees' App. Vol. 2, p. 21. The trial court further found that "[e]ach of the arguments Pflugh makes regarding harm are harms that would be common to the community as a whole. As Pflugh has failed to show the variances cause a special injury to him, he has failed to meet his burden of showing he has been aggrieved." *Id.* at 21–22.

[13]     The trial court found that Pflugh failed to establish that he was particularly harmed, and it is well-settled that we will not set aside a trial court's findings unless they are clearly erroneous. *Bagnall*, 726 N.E.2d at 786 (citing Ind. Trial Rule 52(A) and *Ind. State Highway Comm'n v. Curtis*, 704 N.E.2d 1015, 1017

(Ind. 1998)). Pflugh does not claim, much less establish, that the trial court's findings are clearly erroneous. In the end, none of Pflugh's specific complaints allege any fiduciary harm or a harm that would not be common to the community as a whole.

[14] This is consistent with our decision in *MacFadyen v. City of Angola*, 51 N.E.3d 322 (Ind. Ct. App. 2016), in which we concluded that an adjoining landowner did not have standing to challenge a zoning board decision. Even though the petitioner's land adjoined the parcel at issue, this Court held that the petitioners lacked standing because they could not show that they were prejudiced or aggrieved by the decision. *Id.* The fact that Pflugh's property adjoins the Site does not automatically make Pflugh "aggrieved," and he has failed to allege or establish the necessary pecuniary or special injury to grant him standing to challenge IHPC's rezoning decision on appeal.

## 2. Public Standing

[15] Pflugh contends that he has public standing to challenge the IHPC's decision. "The public standing doctrine applies in cases where public, rather than private, rights are at issue and in cases that involve the enforcement of a public rather than a private right." *Graphic Packaging Int'l, Inc. v. City of Indpls.*, 51 N.E.3d 423, 428 (Ind. Ct. App. 2016) (citing *State ex rel. Cittadine v. Ind. Dep't. of Transp.*, 790 N.E.2d 978, 980 (Ind. 2003)). Pflugh, however, did not raise this public standing argument in the trial court and has therefore waived it for appellate review. *See, e.g.*, *Liberty Landowners*, 913 N.E.2d at 1251 ("[T]he

Commissioners point out that Liberty Landowners did not raise the issue of public standing in the trial court. […] Thus, Liberty Landowners has waived the issue.").

## 3. Appellate Fees

Indiana Rule of Appellate Procedure 66(E) provides, in part, "The Court may assess damages if an appeal, petition, or motion, or response is frivolous or in bad faith. Damages shall be in the Court's discretion and may include attorney's fees."

> Our discretion to award attorney fees under Indiana Appellate Rule 66(E) is limited, however, to instances when an appeal is permeated with meritlessness, bad faith, frivolity, harassment, vexatiousness, or purpose of delay. *Orr v. Turco Mfg. Co., Inc.*, 512 N.E.2d 151, 152 (Ind. 1987). Additionally, while Indiana Appellate Rule 66(E) provides this Court with discretionary authority to award damages on appeal, we must use extreme restraint when exercising this power because of the potential chilling effect upon the exercise of the right to appeal. *Tioga Pines Living Ctr., Inc. v. Indiana Family and Social Svcs. Admin.*, 760 N.E.2d 1080, 1087 (Ind. Ct. App. 2001), *trans. denied.*
>
> Indiana appellate courts have formally categorized claims for appellate attorney fees into "substantive" and "procedural" bad faith claims. *Boczar v. Meridian Street Found.*, 749 N.E.2d 87, 95 (Ind. Ct. App. 2001). To prevail on a substantive bad faith claim, the party must show that the appellant's contentions and arguments are utterly devoid of all plausibility. *Id.*

*Thacker v. Wentzel*, 797 N.E.2d 342, 346 (Ind. Ct. App. 2003).

We conclude that Appellees have failed to establish that all of Pflugh's contentions are utterly devoid of plausibility. As we do not reach the merits of

Pflugh's challenges to the IHPC's decision, we express no opinion on their frivolity or bad faith. At the very least, however, despite ultimately deciding that Pflugh lacks standing to challenge the IHPC's rezoning decision, we acknowledge that he made at least a colorable argument that he would qualify as an "aggrieved" person by living across the street from the Site. Appellees have failed to establish that Pflugh's entire appeal is so frivolous or in bad faith as to warrant the award of appellate attorney's fees.

[18] We affirm.

Riley, J., and May, J., concur.