

**FILED**
Sep 07 2023, 11:11 am
**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Jason M. Kuchmay
Snyder Morgan Federoff & Kuchmay,
LLP
Syracuse, IN

ATTORNEYS FOR APPELLEE
MOSS CREEK SOLAR, LLC

Gregory A. Neibarger
Jessica L. Meek
Moncerrat Z. Alvarez
Indianapolis, IN

ATTORNEYS FOR APPELLEE
PULASKI COUNTY COUNCIL

Mark J. Crandley
Barnes & Thornburg LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Connie Ehrlich, et al., <br> *Appellant-Defendant,* <br><br> v. <br><br> Moss Creek Solar, LLC, and the Pulaski County Council, <br><br> *Appellee-Plaintiff* | September 7, 2023 <br><br> Court of Appeals Case No. 22A-PL-1732 <br><br> Appeal from the Pulaski Superior Court <br><br> The Honorable Jaime M. Oss Special Judge <br><br> Trial Court Cause No. 66-D01-2201-PL-2 |

**Opinion by Judge May**
Judges Crone and Weissmann concur.

**May, Judge.**

[1] Connie Ehrlich, et al., (collectively "Remonstrators") appeal the trial court's order confirming a resolution by the Pulaski County Council ("the Council") that created an Economic Revitalization Area ("ERA") and approved a tax abatement for a proposed commercial solar development by Moss Creek Solar, LLC ("Moss Creek"). Remonstrators challenge whether productive farmland improved with tiling and irrigation systems can qualify as an ERA and whether the legislature's recent amendment of the statute defining an ERA to include a definition specific to farmland creates a presumption that farmland was not permitted to be declared an ERA under the version of the statute in effect when the Council created the ERA. Moss Creek and the Council (hereinafter "Appellees")[1] cross-appeal to challenge whether Remonstrators have standing to challenge the Council's Confirmatory Resolution. We hold Remonstrators have standing but their legal arguments regarding the statute fail, and we accordingly affirm.

## Facts and Procedural History

[2] Moss Creek seeks to develop a commercial solar-power facility ("the Facility") in Pulaski County near high-tension electrical lines. To obtain land for the Facility's development, Moss Creek leased land ("the Land") from various property owners. The Land is zoned agricultural, has tiling and irrigation

---

[1] On November 17, 2022, the Council filed notice that it "joins in the Brief of Appellee filed by its Co-Appellee Moss Creek Solar, LLC."

systems, and has been used for the growing of crops. Moss Creek applied for and obtained a special exception from the Pulaski County Board of Zoning Appeals ("BZA") for the construction of the Facility.

[3] Moss Creek sought to have the Land designated an ERA so that Moss Creek could receive tax abatement for the Facility's development. On October 11, 2021, the Council enacted Resolution No. 2021-11, which was a Preliminary Resolution to establish the Land as an ERA. The Resolution set the matter for public hearing. Remonstrators are landowners in Pulaski County who appeared at the public hearing and filed written remonstrances to Moss Creek's request. At the end of the public hearing on January 10, 2022, the Council approved Pulaski County Resolution #2022-02, which was a Confirmatory Resolution that established the Land as an ERA and granted a tax abatement for the construction of the Facility.

[4] On January 20, 2022, Remonstrators filed a petition for judicial review in the Pulaski Superior Court challenging the Confirmatory Resolution. After appointment of a Special Judge, the parties filed briefs and the trial court held oral argument on June 1, 2022.[2] On June 22, 2022, the Pulaski Superior Court denied Remonstrators' Petition for Review in an order that did not include findings or conclusions.

---

[2] None of the parties submitted additional evidence as permitted by Indiana Code section 6-1.1-12.1-2.5(e).

# Discussion and Decision

## 1. Standing

Appellees' challenge to Remonstrators' standing to appeal from the Council's decision is a "threshold issue[,]" which we must address first. *Solarize Indiana, Inc. v. S. Ind. Gas & Elect. Co.*, 182 N.E.3d 212, 216 (Ind. 2022). To be entitled to have a court decide a legal dispute, "a plaintiff must be a 'proper person' to invoke the court's authority." *Id.* (quoting *Horner v. Curry*, 125 N.E.3d 584, 589 (Ind. 2019)). Standing may be conferred by statute or by common law, *id.*, and when the legislature has provided a standing requirement for review of specific forms of government action, that is the requirement that we apply. *Id.* at 217. Regardless of the alleged basis for standing, if "plaintiffs allege no injury, there is no justiciable dispute." *City of Gary v. Nicholson*, 190 N.E.3d 349, 351 (Ind. 2022). We review questions of standing de novo. *Mammoth Solar v. Ehrlich*, 196 N.E.3d 221, 236 (Ind. Ct. App. 2022).

Regarding the appeal of a decision about an ERA, our legislature provided: "A person who filed a written remonstrance with the designated body under this section and who is aggrieved by the final action taken may . . . initiate an appeal of that action . . . ." Ind. Code § 6-1.1-12.1-2.5(d). The Remonstrators filed written remonstrances with the Council. Appellees allege, however, that Remonstrators were not "aggrieved" by the Council's decision.

> To be aggrieved, the petitioner must experience a substantial grievance, a denial of some personal or property right or the imposition . . . of a burden or obligation. The . . . decision must

> infringe upon a legal right of the petitioner that will be enlarged
> or diminished by the result of the appeal and the petitioner's
> resulting injury must be pecuniary in nature. A [petitioner] must
> show some special injury other than that sustained by the
> community as a whole.

*Bagnall v. Town of Beverly Shores*, 726 N.E.2d 782, 786 (Ind. 2000) (internal citation and quotation marks omitted).

Remonstrators assert they are aggrieved by the Council's decision because the building of the Facility will decrease the value of their properties, which are located adjacent to or near the Land.[3] In support, they note the study attached to their petition for judicial review that indicates property values around solar farms decrease. Appellees do not challenge that property values will decrease, but instead argue the decrease in property values is not a "direct injury" of the ERA declaration and tax abatement, but rather a product of the decision of the BZA granting a special exception for the Facility, and as such is insufficient to confer standing under *Solarize Indiana, Inc. v. Southern Indiana Gas and Electric Co.*, 182 N.E.3d 212 (2022) (standing requires a "'direct injury' [which] is '[a]n injury resulting directly from a particular cause, without any intervening

---

[3] Remonstrators also allege the Council's Confirmatory Resolution injures them by causing "a loss of jobs in the county, loss of income in the county, and other detrimental effects in the county[.]" (Appellants' Br. at 7 n.1.) Because those injuries will be borne by the community generally, they do not constitute the type of individualized special injury required to confer standing. *See, e.g.*, *Pflugh v. Indianapolis Historic Preservation Comm'n*, 108 N.E.3d 904, 910 (Ind. Ct. App. 2018) (additional noise, traffic, and children in the street – "harms that would be common to the community as a whole" – do not qualify as the personal special injury required to confer standing), *trans. denied*.

causes'") (quoting *Black's Law Dictionary* (11th ed. 2019)).[4]  We would be inclined to agree with Appellees if the ERA designation and tax abatement were for business development generally, but in fact, the Council's decision explicitly applies only to the development of the Facility.  The Confirmatory Resolution is subtitled "(MOSS CREEK SOLAR PROJECT)" (Appellants' App. Vol. 2 at 62) (format in original), and provides real property and personal property tax deductions only to "Moss Creek."  (*Id*. at 65.)  Thus, it seems clear the Council's adoption of this Confirmatory Resolution was as necessary for the Facility as was any decision of the BZA.  Both this Confirmatory Resolution by the Council and a grant of a special exception by the BZA make possible the development of the Facility on the Land.  Accordingly, we hold Remonstrators have standing to appeal the Council's Confirmatory Resolution.  *See Mammoth Solar*, 196 N.E.3d at 237 (decrease in property values expected to occur due to development of solar farm confers standing on property owners to appeal special exception granted by BZA).

_____

[4] We also we believe there is a distinction between the "market forces" referenced in *Solarize* and the market forces at play when a landowner's property value will shrink due to a government body's decision regarding adjacent land.  *Solarize* involved a business and the market forces that might cause that business to no longer be as profitable due to shrinkage of customers or suppliers.  That holding is more akin to *EP MSS LLC v. Merrillville Board of Zoning Appeals*, 192 N.E.3d 981 (Ind. Ct. App. 2022), *trans. denied*, wherein we held the owner of a storage facility does not have standing to appeal the grant of a special exception for another business to open a storage facility, because businesses do "not have a right to be free from competition" and the danger of losing business is not a "special injury."  *Id*. at 987.  In contrast, the injuries to property values expected to be experienced by the Remonstrators herein are no less direct than if the Remonstrators had appealed the BZA's grant of a special exception that would permit the building of the Facility.  *See*, *e.g.*, *Mammoth Solar*, 196 N.E.3d at 237 (decrease in property values confers standing on property owners).

## 2. Statutory Construction

Remonstrators argue the statutory definition of an ERA does not include farmland, especially in light of the legislature's recent amendment of that statute. Interpretation of a statute is a pure question of law that we review de novo.[5] *Jones v. Lofton*, 201 N.E.3d 676, 678 (Ind. Ct. App. 2022), *trans. denied*. Our goal when interpreting a statute is to give effect to the legislature's intent, and the best evidence of that intent is the language of the statute itself. *Id*. If a statute is unambiguous, we must give it its clear and plain meaning. *Id*. That parties disagree about the meaning does not make a statute ambiguous. *Southwest Allen Cnty. Fire Protection Dist. v. City of Fort Wayne*, 142 N.E.3d 946, 954 (Ind. Ct. App. 2020), *trans. denied*.

Prior to July 1, 2022, an ERA was defined by statute as

---

[5] The parties disagree about what our standard of review should be. Remonstrators assert the Council's declaration of the ERA is a quasi-judicial action like a zoning board's grant of a variance, (*see* Appellants' Br. at 7), while Appellees argue the grant of an ERA is a legislative action. (*See* Moss Creek Br. at 11.) Because Remonstrators raise questions of law that we review de novo, (*see* Appellants' Reply Br. at 11) ("the crux of this appeal is a legal issue"), we need not determine the precise contours of the appellate standard of review to be applied to other types of questions on appeal from a trial court's confirmation of the designating body's final action. Nevertheless, we note that, unlike in appeals from a zoning board, trial courts are authorized to "hear evidence on the appeal" from a council's declaration of an ERA. *Compare Burton v. Bd. of Zoning Appeals of Madison Cnty.*, 174 N.E.3d 202, 209 (Ind. Ct. App. 2021) ("A trial court and an appellate court both review the decision of a zoning board with the same standard of review. A proceeding before a trial court or an appellate court is not a trial de novo[.]"), *trans. denied*, *with* Ind. Code § 6-1.1-12.1-2.5(e) ("The court shall hear evidence on the appeal, and may confirm the final action of the designating body or sustain the appeal."). This distinction alone suggests our standard of review from a trial court's determination regarding a council's resolution creating an ERA would be distinct from our standard of review for a BZA's grant of a special exception. *See GKN Co. v. Magness*, 744 N.E.2d 397, 401 (Ind. 2001) (When "a trial court conducts an evidentiary hearing, we give its factual findings and judgment deference." However, when the trial court makes factual findings based on a paper record, we give no deference to the trial court's factual findings.).

[a]n area which is within the corporate limits of a city, town, or county which has become undesirable for, or impossible of, normal development and occupancy because of a lack of development, cessation of growth, deterioration of improvements or character of occupancy, age, obsolescence, substandard buildings, or other factors which have impaired values or prevent a normal development of property or use of property. The term "economic revitalization area" also includes:

(A) any area where a facility or a group of facilities that are technologically, economically, or energy obsolete are located and where the obsolescence may lead to a decline in employment and tax revenues; and

(B) a residentially distressed area, except as otherwise provided in this chapter.

Ind. Code § 6-1.1-12.1-1(1) (2013).

In the early months of 2022, Indiana's legislature amended that statute by adding a third subsection to statute that provides:

(C) an area of land classified as agricultural land for property tax purposes that, as a condition of being designated as a revitalization area, will be predominantly used for agricultural purposes for a period specified by the designating body.

Ind. Code § 6-1.1-12.1-1(1) (2022). The legislature did not make any modifications to the pre-existing portions of the statute.

Remonstrators argue "the Amended ERA Statute creates a presumption that the ERA statute governing this proceeding was intended to be changed to

include agricultural/farmland, where it was excluded before." (Appellants' Br. at 11.) In support, Remonstrators quote an Indiana Supreme Court case that states:

> A fundamental rule of statutory construction is that an amendment changing a prior statute indicates a legislative intent that the meaning of the statute has changed. Such an amendment **raises the presumption that the legislature intended to change the law** unless it clearly appears that the amendment was passed in order to express the original intent more clearly.

(*Id.*) (quoting *United Nat. Ins. Co. v. DePrizio*, 705 N.E.2d 455, 460 (Ind. 1999)) (emphasis added by Remonstrators).

[11]  We take no issue with the statement of law quoted by Remonstrators. We do, however, disagree with the inference that Remonstrators draw from the statutory change that occurred. The legislature's creation of a category of ERA for land that "will be predominately used for agricultural purposes for a period specified[,]" Ind. Code § 6-1.1-12.1-1(1) (2022), does not preclude the prior-existing definition of ERA from applying to farmland that will no longer be used for agricultural purposes, presuming of course the land meets the prior-existing definition provided in Indiana Code section 6-1.1-12.1-1(1) (2013).

[12]  Remonstrators also argue that farmland that contains drainage tiling or watering systems has been "improved" or "developed" in a manner that precludes it from being designated an ERA. The statute's controlling language provides:

> "Economic revitalization area" means an area which is within the corporate limits of a city, town, or county which has become undesirable for, or impossible of, normal development and occupancy because of a lack of development, cessation of growth, deterioration of improvements or character of occupancy, age, obsolescence, substandard buildings, or other factors which have impaired values or prevent a normal development of property or use of property.

*Id.*

[13] We in no way underestimate the value and importance of farming as a hobby, profession, or even sacred calling because it produces food required to sustain human life on this planet. Nevertheless, in the context of real property, derivations of the terms "develop" and "improve" consistently refer to the addition of buildings or structures to land. For example, "development" is: "1. A substantial human-created change to improved or unimproved real estate, including the construction of buildings or other structures." BLACK'S LAW DICTIONARY "development" (10th ed. 2004). A "developer" is a "person or company whose business is to buy land and then either to build on it or to improve the existing buildings there." *Id.* "developer". "Improved land" is "[l]and that has been developed; esp., land occupied by buildings and structures." *Id.* Moreover, the ERA statute itself indicates:

> "Redevelopment" means the construction of new structures, in economic revitalization areas, either: (A) on unimproved real estate; or (B) on real estate upon which a prior existing structure is demolished to allow for a new construction.

Ind. Code § 6-1.1-12.1-1(5) (2013). *See also* Ind. Code § 6-1.1-12.1-1(15) (2022) (defining "[n]ew agricultural improvement" as a "term [that] includes a barn, grain bin, or silo"). Based on these authorities, we cannot read "development" or "improvement" in the ERA definition to include drainage tiling or watering systems. Because the Land at issue was "undesirable for, or impossible of, normal development and occupancy because of a lack of development," Ind. Code § 6-1.1-12.1-1(1) (2013), the Council committed no error of law when it declared the Land an ERA and approved the tax abatement.

# Conclusion

[14] Because the building of the Facility would decrease Remonstrators' property values, Remonstrators had standing to appeal the Council's declaration of an ERA and grant of a tax abatement to Moss Creek. Nevertheless, as a matter of law, the farmland at issue met the definition of land that was subject to being declared an ERA. Accordingly, we affirm the trial court's judgment upholding the Council's Confirmatory Resolution.

[15] Affirmed.

Crone, J., and Weissmann, J., concur.