**Charlotte ROBERTSON and the Hoosier Environmental Council, Appellants–Petitioners,**

v.

**BOARD OF ZONING APPEALS, TOWN OF CHESTERTON, and Lake Erie Land Company, Appellees–Respondents.**

No. 64A04–9712–CV–501.

Court of Appeals of Indiana.

Aug. 27, 1998.

Gordon A. Etzler, Hoeppner, Wagner & Evans, Valparaiso, for Appellants–Petitioners.

L. Charles Lukmann, III, Harris Welsh & Lukmann, Chesterton, for Appellee–Respondent Board of Zoning Appeals, Town of Chesterton.

James T. Walker, James T. Walker, Professional Corporation, Merrillville, John G. Donner, T. Clifford Fleming & Associates, PC, Merrillville, for Appellee–Respondent Lake Erie Land Company.

## OPINION

BAKER, Judge.

Appellants-petitioners Charlotte Robertson and The Hoosier Environmental Council (HEC) appeal the trial court's order granting appellees-respondents Chesterton Board of Zoning Appeals (BZA) and Lake Erie Land Company's (Lake Erie) motion to dismiss Robertson and HEC's petition for a writ of certiorari. Although Robertson and HEC present several issues for our review, we find the following issues to be dispositive: 1 whether the trial court erred by concluding that Robertson and HEC lacked standing to petition for certiorari; and 2 whether the court erred by denying Robertson's motion for continuance.

### FACTS

Prior to February 13, 1997, Lake Erie filed a petition for a variance from Chesterton's Comprehensive Ordinance in order to construct a grocery store and to erect a sign on a portion of a 640 acre parcel, which was owned by Lake Erie and located in an area of Chesterton zoned for residential use only. The grocery store was to be approximately 45,000 square feet and was to be located in the corner of the parcel, approximately 300 feet east of State Road 49 at its intersection with County Road 1050 North. Record at 578.

On February 27, 1997, the BZA conducted a public hearing regarding Lake Erie's request. During the hearing, Lake Erie's attorney explained that, due to the proposed location of the entrance to the grocery, it would have to make a few minor changes to the road system near the intersection where the grocery would be located in order to make travel safer. The most onerous of these changes appeared to be the prohibition of left turns at the S.R. 49, 1050N intersection and the rerouting of 1050N. R. at 597. Robertson, who owned two tracts of land, the closest being approximately one and one-half miles from the proposed variance site, attended the hearing and opposed the variance both personally and as representative of HEC, an organization purporting to represent the interests of the public from injuries caused by the variance. Nonetheless, the BZA approved the variance, finding that the construction of the grocery store would not be injurious to the public health, safety, morals and general welfare of the community, the use and value of the area adjacent to the property included in the variance would not be affected in a substantially adverse manner, and that strict application of the terms of the zoning ordinance would make it difficult to use the property in any manner.

However, the BZA stated that a building permit would not be issued until the Indiana Department of Transportation approved the plans for the alterations in the road system.

On March 27, 1997, Robertson, HEC, Jennifer Fontenot and Brendon Smith[1] jointly filed a petition for certiorari in the Porter Superior Court, alleging that the BZA's decision to grant the variance was "illegal, not warranted by the evidence, arbitrary and capricious and an abuse of discretion." R. at 14. Thereafter, on April 11, 1997, the BZA filed a motion to dismiss, which Lake Erie later joined, contending that the petitioners lacked standing to bring a cause of action because they were not "aggrieved"[2] by the BZA's decision. The court set the matter for a hearing on June 4, 1997, which was later continued to June 16, 1997.

On April 28, 1997, Brendon Smith filed a motion to dismiss himself from the suit, which the court granted. On May 21, 1997, Robertson filed a verified motion for the removal of the BZA's counsel in this cause, contending that the BZA's counsel and his law firm had represented her and her family in the past and continue to do so. The court set the matter for hearing on June 16, 1996. On June 12, 1996, Robertson and HEC filed a motion to continue the June 16 hearing, contending that, due to the "great emotional and mental stress" she was sustaining as a result of this litigation, she would be unable to testify, participate or effectively prepare her case during the hearing. R. at 177–78. The court denied Robertson's motion for continuance.

Thereafter, on June 13, 1997, Jennifer Fontenot filed a motion to dismiss herself from the suit, which the court granted. That afternoon, Robertson and HEC served Jerry Mobley, President of Lake Erie, and Gayle Polakowski, the Clerk–Treasurer of Chesterton, with subpoenas which sought to compel their testimony at the June 16 hearing and required them to bring numerous records and documents pertaining to the proposed effects of the variance on the community.

Robertson and HEC also served Jennifer Fontenot and Brendon Smith with subpoenas, seeking to compel their testimony at the hearing as well. Later that same day, Lake Erie and the BZA filed motions to quash the subpoenas, stating that Robertson and HEC had ample opportunity to conduct discovery in this matter, but failed to do so, that their "11th hour" request was burdensome, oppressive, and vexatious and "the materials requested in the subpoena are largely irrelevant to the issues to be addressed" at the hearing. R. at 199.

Also on June 13, 1997, Robertson and HEC filed a memorandum opposing the BZA's and Lake Erie's motion to dismiss. Specifically, HEC contended that, although it did not own property in Chesterton, because it was acting on behalf of its members who were landowners who had been injured by the granting of the variance, HEC had standing. Additionally, Robertson contended that, because she owned property within one and one-half miles of the proposed variance and because she was present as a remonstrator at the meeting before the BZA, she was an aggrieved party. In the alternative, Robertson contended that she and the surrounding landowners were aggrieved by the granting of the variance because the proposed construction would cause harm to the environment, create an aesthetically displeasing landscape, place additional burden and inconvenience on travel and increase the response time of emergency vehicles.

The June 16 hearing was held in Robertson's absence. During the hearing, the court granted Lake Erie's and the BZA's motions to quash the subpoenas which were directed to Mobley, Fontenot and Smith, finding that the information sought to be obtained by the subpoenas was not relevant to the issue of standing. However, the court did not rule on the motion to quash the subpoena of Gayle Polakowski. Thereafter, the court denied Robertson's petition to remove counsel and granted the BZA's and Lake Erie's motion to dismiss, finding that Robertson and HEC

---

1. Although it is not clear from the record, it appears that Fontenot and Smith owned property near the proposed variance site.

2. IND.CODE § 36–7–4–1003 states that only a person aggrieved by the decision of the board of zoning appeals may petition for certiorari.

were not aggrieved parties and, therefore, did not have standing to bring the suit. Robertson and HEC now appeal.

## DISCUSSION AND DECISION

### I.  Standard of Review

■ When, as here, the trial court enters findings of fact and conclusions of law sua sponte, the specific findings control only as to the issues they cover, while a general judgment standard applies to any issue upon which the court has not entered findings. *Reinking v. Metropolitan Bd. of Zoning Appeals of Marion Co.*, 671 N.E.2d 137, 140 (Ind.Ct.App.1996). In reviewing an issue covered by specific findings, we affirm the judgment on any legal theory supported by the findings. *Mitchell v. Mitchell*, 695 N.E.2d 920, 923 (Ind.1998). However, in reviewing an issue not covered by the findings, we may affirm on any theory supported by the evidence. *Reinking*, 671 N.E.2d at 140.

### II.  Standing

Robertson and HEC contend that the trial court erred by granting Lake Erie and the BZA's motion to dismiss. Initially, Robertson and HEC contend that Lake Erie and the BZA waived the right to challenge their standing because they failed to raise the issue at the BZA hearing. HEC also contends that it has standing as a public ombudsman to protect the interest of the community. In addition, Robertson contends that, because she is an adverse party as defined in IND.CODE § 36–7–4–1005(a) she is necessarily an aggrieved party. In the alternative, she contends that she was prevented from establishing that she was an aggrieved party because the court quashed the subpoenas issued to Mobley, Fontenot and Smith.

■ Pursuant to IND.CODE § 36–7–4–1003, only a person aggrieved by the decision of the board of zoning appeals may petition the county circuit or superior court for certiorari. An aggrieved person is one who has suffered a substantial grievance, a denial of some personal or property right, or the imposition of a burden or obligation. *Metropolitan Dev. Comm'n of Marion Co. v. Cullison*, 151 Ind.App. 48, 51, 277 N.E.2d 905, 907

(1972). The person must have a legal interest which will be enlarged or diminished by the result of the appeal. *Id*. However, the term "person aggrieved" is not broad enough to include anyone other than the person directly affected by the action of the board. *Id*. Therefore, a party seeking to petition for certiorari on behalf of a community must show some special injury other than that sustained by the community as a whole. *Id*. We similarly find that a party seeking to petition for certiorari on behalf of itself must also demonstrate a special injury not common to the community as a whole.

### A.  Waiver

■ Initially, Robertson and HEC contend that Lake Erie and the BZA waived the issue of standing because they failed to raise the issue at the BZA hearing when Robertson and another representative from HEC first stated their opposition to the variance. Initially, we note that, as Robertson and HEC correctly point out, the application for writ of certiorari is but a continuation of the proceeding initiated before the board of zoning appeals. *Butler Toyota v. Metro. Bd. Of Zoning Appeals*, 504 N.E.2d 271, 272 (Ind. 1987). Furthermore, failure to timely object to a party's standing may result in waiver. *Wildwood Park Community Ass'n v. Fort Wayne City Plan Comm'n*, 182 Ind.App. 578, 584, 396 N.E.2d 678, 681–682 (1979). Nevertheless, we cannot conclude that a party or a board of zoning appeals waives its right to challenge the standing of a party seeking writ of certiorari, merely because it did not object to the party's standing during the hearing before the board.

While only an "aggrieved person" may file a writ of certiorari to appeal the board of zoning appeals' decision, IND.CODE § 36–7–4–1003, hearings before the board of zoning appeals regarding the grant of a variance are open to the public and any interested person may appear and present relevant evidence. IND.CODE § 36–7–4–920. Because the BZA hearing was open to the public and not limited to aggrieved parties, Lake Erie and the BZA could not have successfully objected to HEC's and Robertson's participation at the hearing. Further, because Robertson and

HEC did not file their petition for writ of certiorari until after the BZA hearing, an objection to their standing to petition for certiorari during the hearing would have been premature. Therefore, we cannot conclude that Lake Erie and the BZA waived their objection to Robertson's and HEC's standing to petition for certiorari by failing to object during the BZA hearing.

### B. HEC's Standing

Next, HEC contends that the trial court erred by determining that it did not have standing to petition for certiorari. Specifically, HEC contends that it "has standing to petition for Writ of Certiorari, in the absence of other parties, to serve as a Public Ombudsman." R. at 24.

This court addressed this very issue in *Cullison,* 151 Ind.App. 48, 277 N.E.2d 905. In *Cullison,* the Metropolitan Development Commission of Marion County and the Department of Metropolitan Development of the City of Indianapolis attempted to petition for certiorari, seeking a review of the board of zoning appeals' decision to grant a zoning variance. In determining that neither of the petitioners had standing as aggrieved persons, this court reiterated that an aggrieved person, must demonstrate the injury to a property interest or any interest not common to the community. *Id.* at 908. The court further held that there is no exception for an entity that is attempting to protect the interests of the community. *Id.* Rather, the court reasoned that the board of zoning appeals is entrusted with the protection of the public interest and, absent legislative authority, no public official or agency should be authorized to seek judicial review of the board's decision absent a showing of a special or individualized injury. *Id.*

Here, HEC has failed to demonstrate that it owned property near the sight of the variance or that it had any personal legal interest affected by the board's decision. Therefore, we cannot conclude that the trial court erred by determining that HEC lacked standing to petition for certiorari. *See Williams–Woodland Park Neighborhood Ass'n v. Bd. of Zoning Appeals of Fort Wayne,* 638 N.E.2d 1295, 1299 (Ind.Ct.App.

1994) (association has no standing as aggrieved person where it failed to demonstrate that it owns property or has legal interest affected by board's decision).

### C. Robertson's Standing

Robertson contends that, because she is an adverse party as defined by IND CODE § 36–7–4–1005 and because as an adverse party, she was entitled to notice of any appeal of a decision of the BZA, she is an aggrieved party. Specifically, she contends that by requiring that adverse parties be provided with notice of an appeal of the board's decision, the legislature intended adverse parties to have standing, as aggrieved parties, to petition for certiorari. We disagree.

In the context of legislative interpretation, the reviewing court seeks to ascertain and give effect to the legislative intent expressed in the statute. *Ansert Mechanical Contractors, Inc. v. Ansert,* 690 N.E.2d 305, 308 (Ind.Ct.App.1997). Where possible, every word must be given effect and meaning and no part is to be held meaningless if it can be reconciled with the rest of the words. *Haltom v. Bruner and Meis, Inc.,* 680 N.E.2d 6, 8 (Ind.Ct.App.1997). Further, in determining the legislature's intent, we shall consider the consequences of different constructions and the legislature's choice of words in light of other alternatives. *Johnson County Farm Bureau Co-op. Ass'n, Inc. v. Indiana Dept. Of State Revenue,* 568 N.E.2d 578, 584 (Ind.Tax 1991).

I.C. § 36–7–4–1005 provides in relevant part as follows:

(a) On filing a petition for a writ of certiorari with the clerk of the court, the petitioner shall have a notice served by the sheriff of the county on each adverse party, as shown by the record of the case in the office of the board of zoning appeals.

(b) An adverse party under this section is "any property owner whose interests are opposed to the petitioner for the writ of certiorari and who appeared at the hearing before the board of zoning appeals either in person or by a written remonstrance or other document that is part of the hearing record." I.C. § 36–7–4–1005(b).

However, as noted above, only "a person aggrieved by a decision of the board" has standing to petition for certiorari. I.C. § 36-7-4-1003. If the legislature had intended adverse parties to have standing to petition for certiorari, it would have so stated. Instead, the legislature, in clear and unambiguous language, chose to specifically limit those adverse parties who were entitled to petition for certiorari to those who were aggrieved by the board's decision. As a result, we cannot conclude that Robertson had standing to petition for certiorari merely because she was an adverse party.

■ We note that this conclusion is consistent with our holding in *Stout v. Mercer*, 160 Ind.App. 454, 312 N.E.2d 515 (1974). In *Stout*, the appellants contended that the appellee did not have standing to petition for certiorari because he did not appear at the hearing before the board of zoning appeals and, therefore, was not an adverse party. In concluding that a petitioner for certiorari need not have been an adverse party in the board proceeding, we noted that "the obvious purpose of [I.C. § 36-7-4-1005(b) ] is to define those persons to whom petitioner must give notice, rather than to define those persons who may petition for the writ." *Id.* at 463, 312 N.E.2d at 520. We find that the same rationale supports our conclusion that the legislature did not intend adverse parties to have standing to petition for certiorari absent a showing that they have been aggrieved by the board's decision.

In the alternative, Robertson appears to contend that she was an aggrieved party because she suffered injury as a result of the board's decision. Although Robertson does not explicitly challenge the court's finding that she did not suffer injury as a result of the BZA's decision, she contends that the court erred by granting Lake Erie's and the BZA's motions to quash the subpoenas issued to Fontenot, Smith, Mobley, which she contends would have produced evidence regarding her injury. The court however, found that the information sought by the subpoenas was not relevant to the issue of standing.

■ In determining whether to permit a discovery request, the court must first determine whether the information sought is relevant. *Bishop v. Goins*, 586 N.E.2d 905, 907 (Ind.Ct.App.1992). For purposes of discovery, information sought is relevant if there is a possibility that it may be relevant to the subject matter of the action. *Id.* at 907 n. 2. If the information is not relevant, no further inquiry is necessary and the discovery is prohibited. *Id.* at 907. Furthermore, the determination of relevancy and whether to grant or deny a discovery request, rests within the sound discretion of the trial court and will be reversed only for an abuse of discretion. *Northside Sanitary Landfill, Inc. v. Bradley*, 462 N.E.2d 1321, 1326 (Ind. Ct.App.1984). An abuse of discretion will not be found unless the decision is clearly against the logic and effect of the facts and circumstances before the court. *Breeden v. Breeden*, 678 N.E.2d 423, 426 (Ind.Ct.App.1997). Furthermore, because of the fact-sensitive nature of discovery issues, the trial court's decisions are clothed with a presumption of correctness on appeal. *Id.*

■ First, Robertson contends that the court erred by quashing the subpoenas summoning Jennifer Fontenot and Brendon Smith to appear and testify during the June 16 hearing. The record reveals that Fontenot and Smith were issued subpoenas so that they could testify regarding the reasons that they chose to dismiss their suits. R. at 524. We agree with the trial court that such testimony would not have been relevant to the issue of whether Robertson and HEC had standing to petition for certiorari.

Nevertheless, Robertson and HEC contend that Fontenot and Smith's testimony was relevant to determine whether Fontenot and Smith had standing to petition for certiorari. Specifically, they appear to contend that if Fontenot and Smith had standing at the time they filed the petition for issue of writ of certiorari, then the petition survives, notwithstanding Fontenot's and Smith's subsequent voluntary dismissal from the suit. However, we note that Richardson and HEC have failed to make a cognizable argument or cite relevant authority supporting their contention as required by Ind. Appellate Rule 8.3(A)(7). Therefore, they have waived this issue on appeal. *See Mullis v. Martin*, 615

N.E.2d 498, 500 (Ind.Ct.App.1993) (failure to present cognizable argument and citation to authority in support thereof, results in waiver of issue on appeal). Furthermore, Fontenot and Smith's standing was not an issue before the trial court during the June 16 hearing. Therefore, we cannot conclude that the trial court abused its discretion by quashing the subpoenas issued to Fontenot and Smith.

Next, Robertson contends that the trial court erred by quashing the subpoena issued to Mobley, which requested him to testify and to produce the following documents at the June 16 hearing:

ALL FILES CONCERNING THE [PROPOSED VARIANCE], PLANS, DRAWINGS, NOTATIONS AND CORRESPONDENCE, HIGHWAY REPORTS, ESTIMATE OF COST OF CONSTRUCTION OF BILLBOARD STRUCTURE SIGNS, ALL ENVIRONMENTAL REPORTS, IF ANY, AND ANY OTHER DOCUMENTS OR REPORTS USED OR INTENDED TO BE USED OR REQUESTED FOR USE IN THE DEVELOPMENT AND DESIGN OF THE 640 ACRES, INCLUDING ALL REPORTS, MEMORANDA AND FINANCIAL STATEMENTS TO SUPPORT THE FINANCING, PAYMENT OF EXPENSES OR COSTS OF DEVELOPMENT OF THE 640 ACRES.

R. at 201. HEC and Robertson contend that the subpoena was issued to obtain information regarding the variance's impact including the size of the grocery store, how many customers the store was intended to service and how much traffic it would generate.[3]

■ Even assuming Mobley's testimony and the documents requested may have been relevant to demonstrate injuries to the community as a whole, such as increased traffic, environmental and aesthetic concerns, and the rerouting of roads, we fail to see, and Robertson has failed to allege, how the re-

quested documents and testimony could have produced information that was relevant to whether or not Robertson or HEC had suffered a special interest not common to the community as a whole. In fact, in Robertson's and HEC's memorandum in support of their contention that they have standing to petition for certiorari, they admit that "[t]he surrounding landowners will be injured in the same manner as Petitioner Robertson will be." R. at 220. In light of this evidence, we cannot conclude that the trial court erred by determining that the information sought by the subpoena was not relevant to the issue of standing. *See Cullison*, 277 N.E.2d at 907 (petitioner did not have standing to petition for certiorari where it did not demonstrate interest not common to community as whole). As a result, the trial court did not abuse its discretion by quashing the subpoena.

■ Furthermore, we note that even if the information sought by the subpoenas was relevant to the issue of standing, Ind. Trial Rule 26(C) grants a trial court discretion to make any order to protect a party from annoyance, embarrassment, oppression, or undue burden or expense. Here, the record reveals that Robertson and HEC waited until the Friday afternoon before the Monday, June 16 hearing to issue the subpoenas. Although Robertson and HEC had many other means of discovery available to them, the record is devoid of any earlier and less burdensome attempts to obtain the information. Further, they have failed to allege that the only way to obtain the sought-after information was through the subpoenas. Therefore, we cannot conclude that the trial court erred by quashing the subpoenas. *See Matter of Estate of Wilson*, 610 N.E.2d 851, 854 (Ind. Ct.App.1993) (trial court did not err by quashing subpoena requiring witness to attend deposition where issuer of subpoena failed to pursue other means of discovery or demonstrate that other means not available),

---

3. Robertson and HEC contend that the subpoena directed to Mobley was also issued to produce information, not only of the effects of the current variance, but possible effects of the future development of the remaining 640 acres. The record reveals that the scope of the variance granted by the BZA was limited to permitting the construc-

tion of a grocery store. R. at 610, 614. As such, the trial court did not err by determining that any effects of possible future variances upon Robertson and HEC were not relevant to determine whether they had standing to petition the court to review the variance which had been granted.

*trans. denied, cert. denied,* 510 U.S. 1072, 114 S.Ct. 879, 127 L.Ed.2d 75 (1994).[4]

*III. Failure to Grant Motion to Continue*

Finally, Robertson and HEC contend that the trial court erred by denying their motion to continue the June 16 hearing. Specifically, they contend that the trial court was required to grant their motion for continuance because they demonstrated that, due to the mental and emotional anguish Robertson was suffering as a result of the lawsuit, she was unable to be present for the hearing.

■ The grant or denial of a motion for continuance rests in the sound discretion of the trial court and will be reversed only for an abuse of that discretion. *Indiana High School Athletic Ass'n, Inc. v. Schafer,* 598 N.E.2d 540, 555 (Ind.Ct.App.1992). Although an abuse of discretion may be found in the denial of a motion for a continuance when the movants have shown good cause for granting the motion, no abuse of discretion will be found when the movants have not demonstrated that they were prejudiced by the denial. *Matter of L.C.,* 659 N.E.2d 593, 597 (Ind.Ct.App.1995), *trans. denied,* 683 N.E.2d 582 (Ind.1997), *cert. denied,* ──── U.S.────, 117 S.Ct. 2515, 138 L.Ed.2d 1017 (1997).

■ Here, Robertson and HEC have failed to demonstrate that they were prejudiced by Robertson's absence. Although Robertson contends that, because of her absence, she was unable to testify regarding her relationship with the BZA's counsel, we have already determined that she did not have standing. Therefore, we need not address her contention. Further, Robertson and HEC have failed to similarly allege any prejudice to their position regarding their standing to petition for certiorari. In fact, Robertson and HEC have failed to even allege that Robertson would have testified had she been present, let alone what that testi-

mony would be or how it would have demonstrated that she or HEC had standing. In addition, the record reveals that Robertson's and HEC's attorney vigorously advocated their position regarding their standing to petition for certiorari in Robertson's absence. Because Robertson and HEC have failed to demonstrate that Robertson's absence prejudiced them regarding this issue, we cannot conclude that the court abused its discretion by denying Robertson's motion for continuance.

Judgment affirmed.

SULLIVAN and KIRSCH, JJ., concur.

4. Robertson also contends that the trial court erred by quashing the subpoena issued to Gayle Polakowski. However, the record reveals that the trial court never ruled on that particular motion during the June 16, 1997, hearing. Further, the record reveals that Robertson did not call to the court's attention its failure to do so.

Therefore, at the time of the hearing the motion had not been ruled upon by the court. However, five days later, the motion was deemed denied pursuant to Ind.Trial Rule 53.4. Therefore, Robertson cannot now contend that the court improperly granted the motion to quash.