# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 12 2018, 5:39 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Donald J. Tribbett
Tribbett Law Office
Logansport, Indiana

ATTORNEY FOR APPELLEES –
SPEEDWAY SAND & GRAVEL,
JEFFREY BAUMAN, AND
CUSTER FARMS, INC.

Stephen L. Fink
Barnes & Thornburg LLP
Fort Wayne, Indiana

ATTORNEY FOR APPELLEE –
DEKALB COUNTY BOARD OF
ZONING APPEALS

David A. Kruse
Kruse & Kruse, P.C.
Auburn, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| DeKalb County Airport Authority, *Appellant-Petitioner,* v. DeKalb County Board of Zoning Appeals, Speedway Sand & Gravel, Inc., Jeffrey Bauman, | October 12, 2018 Court of Appeals Case No. 18A-PL-48 Appeal from the DeKalb Superior Court The Honorable J. Scott VanDerbeck, Special Judge Trial Court Cause No. 17D02-1612-PL-56 |

Custer Farms, Inc., and Ed
Schneider,

*Appellees-Respondents.*


**Najam, Judge.**

# Statement of the Case

DeKalb County Airport Authority ("the Airport") appeals the trial court's entry of summary judgment in favor of the DeKalb County Board of Zoning Appeals ("the Board"), Speedway Sand & Gravel, Inc. ("Speedway"), Jeffrey Bauman, and Custer Farms, Inc. ("Custer") on the Airport's petition for judicial review challenging a special exception granted by the Board. The Airport presents a single dispositive issue for our review, namely, whether the trial court erred when it found and concluded that the Airport lacks standing under Indiana Code Section 36-7-4-1603 to challenge the special exception. We affirm.

# Facts and Procedural History

On October 24, 2016, Speedway, Bauman, and Custer (collectively "the Applicants") filed their application with the Board for a special exception to permit Speedway to conduct a sand and gravel processing operation, which would include the creation of two lakes, on property owned by Bauman and

Custer and located approximately one mile away from the Airport. The Airport "filed responses" to the application and appeared, along with "a number of pilots," at the November 14 hearing on the application to oppose it. Appellant's Br. at 9. In addition, "material presented" at a hearing on a prior application[1] "was incorporated by reference." *Id.* In essence, the Airport alleged that the creation of "new waterbodies in close proximity to the [Airport] and within the flight path to the Airport . . . would present a hazard to operations at the Airport" because "waterbodies are a well-recognized bird attractant[.]" *Id.* at 7. And the Airport asserted that the creation of such bodies of water violated provisions of an airport overlay zoning district contained within the DeKalb County Unified Development Ordinance ("UDO").

[3] Following the hearing, the Board granted the special exception subject to twenty conditions, including in relevant part as follows:

> e. The Special Exception approvals are only for the businesses testified to and are for gravel extraction and sand and gravel processing and an artificial lake of 10 or more acres.

> \* \* \*

> h. Comply with Development Plan as submitted to the Board as required by Article 9. 9.20. See Plans filed, which Development Plan includes the mitigation plan which provides for mitigation of the effects of any new residual body of water, geese and/or

---

[1] On February 19, 2015, Speedway filed its first application for a special exception for the sand and gravel operation, which the Board approved after a hearing. But the Airport filed a complaint for declaratory and injunctive relief, and the trial court declared the special exception void.

wildlife on the airport operations. This mitigation plan is approved as a reasonable balancing of the interest of the Airport and Speedway's statutory right to have the complete use and alienation of gravel resources. . . .

The BZA may impose conditions needed to protect health and safety.

See the Determination of Compliance dated July 18, 2016, signed by Clinton Knauer, Zoning Administrator and Response to Brad Hartz Letter to Clinton Knauer Dated August 15, 2016[,] Regarding Determination of Compliance, signed by Clinton Knauer, Zoning Administrator.

* * *

k. Special Exception includes the pond or artificial lake over ten acres as per the development plan as it is determined that this is reasonable practice to be approved as part of the special exception.

* * *

m. The Zoning Administrator approved the mitigation plan as complying with condition "m" in the April 6, 2015[,] hearing. The mitigation plan was deemed to be a condition that needs to be met before any improvement location permit was issued. Said mitigation plans for birdlife especially geese migration for new residual bodies of water is subject to Zoning Administrator's monitoring to assure implementation and compliance. The BZA may require Changes in the mitigation plan depending on changes in conditions and/or exact location of residual bodies of water from mineral extraction.

* * *

p. Comply with any laws and regulations of FAA, DNR, Army Corp[s] of Engineers, IDEM, Rule 5 Soil and Water Conversation to the extent applicable to the activities taking place at the special exception site.

q. Zoning Administrator shall determine when the conditions are met.

* * *

s. If applicant violates any conditions and this comes to the attention of the Zoning Administrator, then the Zoning Administrator shall notify applicant Speedway and see if the issue can be resolved. If not the Zoning Administrator if deemed appropriate may file a show cause action with the Board of Zoning Appeals. If a Board of Zoning Appeals decision is not followed by Applicant then the BZA may file an enforcement action in Court. This administrative remedy needs to be followed before any adverse party initiates Court action due to failure to exhaust administrative remedies. The BZA is the enforcing entity.

Appellant's App. Vol. II at 47-49.

[4] On December 9, the Airport filed a petition for judicial review of the special exception. The parties filed cross-motions for summary judgment, and the Board filed a motion to dismiss. Following a hearing on all pending motions, the trial court concluded that the Board and the Applicants were entitled to summary judgment "because the Airport Authority is not aggrieved or prejudiced" by the special exception, as required by Indiana Code Sections 36-7-4-1603 and -1614, and, therefore, the Airport did not have standing to seek

judicial review. *Id.* at 19. In the alternative,[2] the trial court found and concluded that the Board's decision: is not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; is not contrary to a constitutional right, power, privilege, or immunity; is not in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; follows the procedures required by law; and is supported by substantial evidence. Thus, the trial court entered summary judgment in favor of the Board and the Applicants on those grounds as well. This appeal ensued.[3]

## Discussion and Decision

[5] We review an order for summary judgment *de novo*, which is the same standard of review applied by the trial court. *Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014). The moving party must "affirmatively negate an opponent's claim" by demonstrating that the designated evidence raises no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Id.* (internal quotation marks omitted). The burden then shifts to the nonmoving party to demonstrate a genuine issue of material fact. *Id.* The party appealing from a summary judgment decision has the burden of persuading this court that

---

[2] Because we hold that the trial court did not err when it found that the Airport lacked standing to bring its petition, we need not address the alternative grounds for summary judgment.

[3] The trial court's summary judgment order was not a final, appealable order because the Airport's claim against Ed Schneider was not resolved. Accordingly, we issued an order to show cause why this appeal should not be dismissed, temporarily stayed the appeal, and remanded to the trial court. By order dated July 23, 2018, the trial court issued an order stating that there is no just reason for delay and directing entry of final judgment. *See* Ind. Trial Rule 56(C).

the grant or denial of summary judgment was erroneous. *Knoebel v. Clark County Superior Court No. 1*, 901 N.E.2d 529, 531-32 (Ind. Ct. App. 2009). The dispositive issue in this appeal, namely, whether the Airport has standing, is a pure question of law. *Bellows v. Bd. of Comm'rs of Cty. of Elkhart*, 926 N.E.2d 96, 113 (Ind. Ct. App. 2010).

[6] The parties agree that Indiana Code Section 36-7-4-1603(a)(2) applies here and provides that, in order to have standing to obtain judicial review of the Board's decision granting the special exception, the Airport must be "aggrieved" by the decision.[4] In addition, Indiana Code Section 36-7-4-1614 provides in relevant part that relief is available only to a person seeking judicial review of a zoning decision who has been prejudiced thereby. We note that, while the trial court initially stated in its order on summary judgment that the Airport "meets the standing requirements" of Section 36-7-4-1603(a)(2), the court proceeded to find that the Airport "is not aggrieved or prejudiced."[5] Appellant's App. Vol. II at 19. The court correctly noted that "[j]udicial review is available, but only to those with the ability to fulfill the requirements of the 1600 Series." *Id.* at 20. And the court concluded that the Airport "does not meet the requirements of

---

[4] The Airport concedes that Indiana Code Section 36-7-4-1603 "require[s]" a showing that it is "aggrieved." Appellant's Br. at 25.

[5] The Airport does not point out this inconsistency in the trial court's order but frames its argument on the assumption that the court concluded that the Airport had no standing to seek judicial review. We also note that the Airport incorrectly asserts that, during the summary judgment hearing, "the trial court stated that [the Airport] has standing to seek judicial review of [the Board's] decision." Appellant's Br. at 23. The trial court did not make any such declaration during the hearing, but merely posed a question about standing to the Applicants' counsel during argument. *See* Tr. Vol. II at 38.

the 1600 Series" and entered summary judgment in favor of the Board and the Applicants for that reason. *Id.*

[7] The Airport contends that "[t]he court's order is in error." Appellant's Br. at 23. In particular, the Airport asserts that the trial court had already concluded that it has standing and the doctrine of collateral estoppel applies here. In the alternative, the Airport maintains that it is "aggrieved" under the statute and, therefore, has standing as a matter of law. We address each issue in turn.

### Collateral Estoppel

[8] The special exception at issue in this appeal is the *second* special exception approved by the Board for Speedway's sand and gravel processing operation. The first special exception for the operation was approved by the Board on April 6, 2015. The Airport sought judicial review of that special exception and, while that petition was pending, on November 16, the Airport filed an amended complaint for declaratory judgment and injunctive relief seeking to prevent the Applicants from creating any bodies of water on their property.[6]

[9] Count II of the Airport's amended complaint in the declaratory judgment action averred that,

> after the special exception was granted by the [Board] on April 6, 2015, [the Applicants] failed to execute and record the conditions which were attached to the granting of the special exception

---

[6] The Airport has not included in the appendix on appeal a copy of that complaint or the amended complaint.

within sixty (60) days and, therefore, the special exception became void pursuant to the provisions of the Dekalb County Zoning Code.

Appellant's App. Vol. II at 104-05. Following a hearing, the trial court concluded in relevant part that the Airport had standing to "prosecute a declaratory judgment action" and, more specifically, that it had standing "to seek the relief it request[ed] from this Court in Count II of its Amended Complaint." Appellant's App. Vol. IV at 73. Further, the court concluded that "Speedway did not comply with the 60[-]day rule set forth at UDO 9.20(G)6b and, therefore, the special exception granted to Speedway by the [Board] is void pursuant to UDO 9.20(G)8." *Id.* at 70. Thus, the court entered summary judgment in favor of the Airport on Count II and declared the remaining counts of its complaint "moot." *Id.* at 74.

[10] In this appeal from summary judgment for the Board and the Applicants, the Airport contends that the trial court "erred by failing to apply collateral estoppel and hold that the standing issue had already been resolved in [the Airport's] favor" in the declaratory judgment action. Appellant's Br. at 24. As this court has explained,

> [i]ssue preclusion[, also known as collateral estoppel,] bars the subsequent litigation of a fact or issue that was necessarily adjudicated in a former lawsuit if the same fact or issue is presented in the subsequent lawsuit. If issue preclusion applies, the former adjudication is conclusive in the subsequent action, even if the actions are based on different claims. The former adjudication is conclusive only as to those issues that were

actually litigated and determined therein. Thus, issue preclusion does not extend to matters that were not expressly adjudicated and can be inferred only by argument. In determining whether issue preclusion is applicable, a court must engage in a two-part analysis: (1) whether the party in the prior action had a full and fair opportunity to litigate the issue, and (2) whether it is otherwise unfair to apply issue preclusion given the facts of the particular case. The non-exhaustive factors to be considered by the trial court in deciding whether to apply issue preclusion include: (1) privity, (2) the defendant's incentive to litigate the prior action, and (3) the ability of the plaintiff to have joined the prior action.

*Freels v. Koches*, 94 N.E.3d 339, 342 (Ind. Ct. App. 2018) (quoting *Angelopoulos v. Angelopoulos*, 2 N.E.3d 688, 696 (Ind. Ct. App. 2013), *trans. denied*).

[11] The Airport maintains that collateral estoppel applies here because the parties to the declaratory judgment action are identical, the claims are identical, and the Applicants "raised the exact same standing issue as they raised here." Appellant's Br. at 24. However, while the Applicants argued in the declaratory judgment action that the Airport lacked standing under Indiana Code Section 36-7-4-1603, the trial court in that proceeding did not make a final determination on that specific issue. Rather, without making any determination whether the Airport was "aggrieved" under the statute, the court found that the Airport had standing to prosecute a declaratory judgment action and concluded only that the Airport had standing "to seek the relief it request[ed]" in Count II of its amended complaint. Appellant's App. Vol. IV at 73. Because the allegation in Count II of the declaratory judgment action has

no bearing on whether the Airport has standing under Indiana Code Section 36-7-4-1603, collateral estoppel does not apply here.

### *Indiana Code Section 36-7-4-1603(a)(2)*

[12]    The Airport next contends, in the alternative, that the trial court erred when it concluded that the Airport lacks standing to seek judicial review of the special exception under the applicable statute. Again, Indiana Code Section 36-7-4-1603(a)(2) provides that, in order to have standing to obtain judicial review of the Board's decision granting the special exception, the Airport must be "aggrieved" by the decision. As our Supreme Court has explained,

> [t]o be aggrieved, the petitioner must experience a "substantial grievance, a denial of some personal or property right or the imposition . . . of a burden or obligation." [*Union Twp. Residents Ass'n v. Whitley Cty. Redevelopment Comm'n*, 536 N.E.2d 1044, 1045 (Ind. Ct. App. 1989)]. *The board of zoning appeals's decision must infringe upon a legal right of the petitioner that will be "enlarged or diminished by the result of the appeal" and the petitioner's resulting injury must be pecuniary in nature. Id.* "[A] party seeking to petition for certiorari *on behalf of a community* must show some special injury other than that sustained by the community as a whole." *Robertson v. Board of Zoning Appeals, Town of Chesterton*, 699 N.E.2d 310, 315 (Ind. Ct. App. 1998).

*Bagnall v. Town of Beverly Shores*, 726 N.E.2d 782, 786 (Ind. 2000) (emphases added).

[13]    On appeal, the Airport does not address the elements in *Bagnall* relevant to a determination of its standing under the statute. In particular, the Airport makes no contention or argument that it has experienced "a substantial grievance" or

that the Board's decision "infringe[s] upon a legal right" of the Airport. *Id.*
Neither does the Airport direct us to evidence that it will sustain or has
sustained a pecuniary injury. *Id.*

[14] Rather, in making its argument that it has standing, the Airport relies on a
misinterpretation of our Supreme Court's holding in *Bagnall*. In particular, the
Airport interprets *Bagnall* to hold that "a party is aggrieved if the party suffers
*either* 'infringement of a legal right resulting in pecuniary injury' *or* 'a special
injury beyond that sustained by the entire community.'"[7] Appellant's Br. at 28
(emphases added). And the Airport's sole contention on appeal is that it has
standing because it has suffered a "special injury."[8]

---

[7] The Airport maintains that,

> as the owner and operator of a public use airport, [the Airport] clearly suffers an injury if
> a board of zoning appeals disregards provisions of a zoning ordinance, thereby allowing
> the development of a hazard to safe operations at that airport. [The Airport] is aggrieved
> in accordance with the standard stated in *Bagnall*.

Appellant's Br. at 28-29. In its reply brief, the Airport concedes that it is "petitioning to protect its own
interests—not the interests of the community as a whole." Reply Br. at 20. The Airport then asserts, without
citation to the designated evidence, that it

> introduced evidence showing that it could suffer a pecuniary loss as a result of the safety
> hazard being created although it cannot quantify that loss or even confirm it will occur.
> The crux of [the Airport's] standing is the special injury (i.e. the creation of a safety
> hazard) which is unique to [the Airport]. Speedway has not and cannot identify anyone
> else that will experience that special injury. [The Airport] has standing.

*Id.* at 18.

[8] To the extent this court stated in *Robertson v. Board of Zoning Appeals, Town of Chesterton* that "a party seeking
to petition for certiorari on behalf of itself must *also* demonstrate a special injury not common to the

However, our Supreme Court's holding in *Bagnall* is clear. To show that it is aggrieved the Airport must demonstrate that: (1) the Applicants' alleged "creation of a safety hazard" infringes upon a legal right of the Airport that will be "enlarged or diminished by the result of the appeal" and (2) the Airport's resulting injury is pecuniary in nature. *See Bagnall*, 726 N.E.2d at 786. In its arguments to the trial court and in its brief on appeal, the Airport has not explained how the alleged safety hazards impact a "legal right," and it has not even acknowledged that it must meet this element under *Bagnall* to show that it is aggrieved under the statute. Further, if, in the context of its argument on standing, the Airport argued to the trial court that it will suffer a pecuniary injury as a result of the special exception, it has not directed us to any part of the record to support that contention. And the Airport only mentions a "pecuniary loss," without any citation to evidence, in its reply brief on appeal, while reiterating that "[t]he crux of [the Airport's] standing is the special injury" it will suffer. Reply Br. at 18.

Simply put, the Airport has not made cogent argument and has failed to show how the designated evidence satisfies the *Bagnall* elements that apply when a petitioner is not petitioning on behalf of a community. A court which must search the record and make up its own arguments because a party has not adequately presented them runs the risk of becoming an advocate rather than an

community as a whole," we find no support for that statement. 699 N.E.2d 310, 315 (Ind. Ct. App. 1998) (emphasis added). And, in any event, *Robertson* merely adds the "special injury" element to the elements that were subsequently set out in *Bagnall*, which, again, the Airport does not address in its brief on appeal.

adjudicator.[9]  *Young v. Butts*, 685 N.E.2d 147, 151 (Ind. Ct. App. 1997).  An appellate brief should not only present the issues to be decided on appeal, but it should be of material assistance to the court in deciding those issues.  *Id.*  On review, we will neither search the record to find a basis for a party's argument nor search the authorities cited by a party in order to find legal support for its position.  *Id.*  A trial court's summary judgment ruling is clothed with a presumption of validity, and the losing party has the burden of establishing that the trial court erred.  *Thomson Inc. v. Ins. Co. of N. Am.*, 11 N.E.3d 982, 994 (Ind. Ct. App. 2014), *trans. denied*.  The Airport has not shown that it is an aggrieved party with standing under the statute, and we hold that the Airport has not satisfied its burden of persuading this court that the grant of summary judgment was erroneous.

### *Conclusion*

[17]     The trial court did not err when it found that the Airport is not aggrieved.  Accordingly, the Airport does not have standing to seek judicial review of the Board's grant of the special exception, I.C. § 36-7-4-1603(a)(2), and we affirm the trial court's grant of summary judgment in favor of the Board and the Applicants.

---

[9]  The dissent's analysis is not found in the Airport's brief on appeal, nor is it found in the Airport's arguments to the trial court.  The Airport had the burden to show standing under Indiana Code Section 36-7-4-1603(a)(2), and it did not do so.  While it has presented evidence of harm and potential harm that may result from the Board's grant of the special exception, without *any* argument to explain how that harm constitutes the infringement of a legal right or results in pecuniary injury, the Airport cannot prevail on appeal.  *See Bagnall*, 726 N.E.2d at 786.

Affirmed.

Altice, J., concurs.

Robb, J., concurs in part and dissents in part with separate opinion.

# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| DeKalb County Airport Authority, | Court of Appeals Case No. 18A-PL-48 |
| *Appellant-Petitioner,* | |
| v. | |
| DeKalb County Board of Zoning Appeals, Speedway Sand & Gravel, Inc., Jeffrey Bauman, Custer Farms, Inc., and Ed Schneider, | |
| *Appellees-Respondents.* | |

**Robb, Judge, concurring in part and dissenting in part.**

I concur with the majority's decision that collateral estoppel does not apply under the circumstances of this case. I dissent, however, from the majority's decision regarding the Airport's standing.

Indiana Code section 36-7-4-1603(a)(2) gives the right of judicial review of a zoning decision to a "person aggrieved." Over a century ago, *McFarland v. Pierce*, 151 Ind. 546, 45 N.E. 706 (1897), "constructed what is still today

considered the seminal definition of the term 'aggrieved.'" *Simon v. Simon*, 957 N.E.2d 980, 991 (Ind. Ct. App. 2011) (Riley, J., dissenting).

> The word "aggrieved" in the statute [conferring the right to appeal on any person aggrieved by the appointment of a receiver] refers to a substantial grievance, a denial of some personal or property right, or the imposition upon a party of a burden or obligation. To be "aggrieved" is to have a legal right, the infringement of which by the decree complained of will cause pecuniary injury. The appellant must have a legal interest which will be enlarged or diminished as a result of the appeal.

*McFarland*, 151 Ind. at 548, 45 N.E. at 706-07 (citations and quotations omitted). "Essentially, to be 'aggrieved or adversely affected,' a person must have suffered or be likely to suffer in the immediate future harm to a legal interest, be it a pecuniary, property, or personal interest." *Huffman v. Office of Envtl. Adjudication*, 811 N.E.2d 806, 810 (Ind. 2004).

[21] Eight decades later, this court applied the *McFarland* definition in considering whether the City of Indianapolis[10] was a "person aggrieved" by a decision of the board of zoning appeals granting a zoning variance. *Metro. Dev. Comm'n of Marion Cty. v. Cullison*, 151 Ind. App. 48, 277 N.E.2d 905 (1972). The facts of the case are not well-developed in the opinion, but it appears the City was attempting to represent the interests of remonstrators to the zoning decision.

---

[10] The City was represented by the Metropolitan Development Commission of Marion County and the Department of Metropolitan Development of the City of Indianapolis by its Division of Planning and Zoning.

*See id.* at 52, 277 N.E.2d at 908 (City arguing that if it cannot be an aggrieved person, "[n]o entity of government will be able to . . . initiate review of Board decisions in the interest of citizens and in the interest of overall community development and policy"). This court agreed with the trial court that the City was not a "person aggrieved" because the City made no attempt to demonstrate that it was *legally* aggrieved; that is, it did not show "any property interest or any interest not common to the community as a whole." *Id.*

[22] When our supreme court recently stated in *Bagnall*, "'[A] party seeking to petition for certiorari on behalf of a community must show some special injury other than that sustained by the community as a whole[,]'" 726 N.E.2d at 786 (quoting *Robertson v. Bd. of Zoning Appeals, Town of Chesterton*, 699 N.E.2d 310, 315 (Ind. Ct. App. 1998)), it was restating *Cullison*'s basic precept: an entity purporting to represent a community as a whole is not aggrieved because it generally does not suffer any special injury other than that sustained by the community as a whole. *See Common Council of Michigan City v. Bd. of Zoning Appeals of Michigan City*, 881 N.E.2d 1012, 1015-16 (Ind. Ct. App. 2008).[11] Essentially, the "special injury" requirement is simply a restatement of the *McFarland* definition of what it means to be "aggrieved." In other words, requiring a petitioner on behalf of a community to show a special injury is just another way of saying the petitioner must have a personal stake in the decision.

---

[11] Although holding that the Common Council as a representative entity did not have standing, the court noted that if a representative entity was *itself* a landowner affected by the decision, it might be able to show it was "a person aggrieved" with standing to challenge a zoning decision. *See id.* at 1016 n.2.

*See Cittadine v. Ind. Dep't of Transp.*, 790 N.E.2d 978, 979 (Ind. 2003) ("[O]nly those persons who have a personal stake in the outcome of the litigation and who show that they have suffered or were in immediate danger of suffering a direct injury as a result of the complained-of conduct will be found to have standing. . . . It is generally insufficient that a plaintiff merely has a general interest common to all members of the public.").

[23]     I elaborate on the meaning and import of the "special injury" language because given its origin, I do not think the Airport's assertions that it will suffer a "special injury" because of the variance necessarily means it has not shown it satisfies the *Bagnall* elements. *See* slip op. at ¶¶ 13-14. *Bagnall* did not create a new test for standing out of whole cloth; rather, it merely restates in modern times and terms what has always been the law.[12] Showing a "special injury" is neither an alternative nor an additional element of being aggrieved. *Contra Pflugh v. Indianapolis Historic Preservation Comm'n*, 2018 WL 4003193 at ¶ 9 (Ind. Ct. App. Aug. 1, 2018) ("A petitioner must *also* demonstrate a special injury not common to the community as a whole."). Rather, showing a special injury and being "a person aggrieved" are essentially the same thing.[13]

---

[12] *Bagnall* quotes *Union Twp. Residents Ass'n, Inc. v. Whitley Cty. Redevelopment Comm'n*, 536 N.E.2d 1044 (Ind. Ct. App. 1989), which in turn cites *Wiedenhoft v. City of Michigan City*, 250 Ind. 327, 236 N.E.2d 40 (1968), which in turn quotes *McFarland*.

[13] Accordingly, I am not troubled by the language in *Robertson*. *See* slip op. at ¶ 14 n.8. *Robertson* involved two appellants –the Hoosier Environmental Council and a private citizen. Thus, the standing of both a representative and an individual were at issue. The court stated in its opening paragraphs regarding standing:

As to the Airport's standing in this case, the Airport has asserted:

- provisions of the existing zoning code prohibit the creation of an artificial body of water in the areas at issue at least in part in recognition of the particular safety aspects in the immediate vicinity of an airport, *see* Addendum to Brief of Appellant at 8-9 (prohibiting retention and recreational ponds from the "Runway Protection Zone" – the "very high risk area located at the beginning and end of the runway" – and the "Inner Approach/Departure Zone" – the "high risk zone adjacent to the Runway Protection Zone at each end of the runway [that is] overflown by aircraft at low altitudes";

- the ponds that have and will result from Speedway's mineral and gravel extraction activities lie within the flight path for approaching and departing aircraft, that ponds are attractants for birds which are a known hazard to aviation, and that this presents a danger to aircraft and to persons on the ground; and

---

[A] party seeking to petition for certiorari on behalf of a community must show some special injury other than that sustained by the community as a whole. We similarly find that a party seeking to petition for certiorari on behalf of itself must also demonstrate a special injury not common to the community as a whole.

699 N.E.2d at 310 (citing *Cullison*, 151 Ind. App. at 51, 277 N.E.2d at 907). Rather than reading *Robertson* as imposing a showing of a "special injury" as an additional element on an individual, I read *Robertson* as saying *both* an entity representing a community *as well as* an individual representing himself must show he is aggrieved – i.e., has suffered a special injury by the zoning decision – and simply including the standard for both appellants in a single statement of law before addressing the particulars of each appellant's standing separately.

- the zoning decision jeopardizes federal funding for future airport improvement projects because the Airport will not be in compliance with FAA advisories.

Contrary to the majority's assertion, I have not searched the record to make an argument for the Airport. *See* slip. op at ¶ 16 n.9. On its face, the Airport's petition for judicial review shows it is an airport and the Board's approval of Speedway's petition to create ponds in high risk areas near the Airport will lead to the creation of an "attractive nuisance," so to speak, that, because of the Airport's specialized use and singular purpose—to safely send off and land airplanes—is a nuisance in this particular manner only to the Airport.

Specifically, the Airport has alleged the variance denies the Airport the benefit of provisions of the applicable zoning code; imposes upon the Airport the burden to mitigate the hazards that the ponds present to its particular business and clientele; imposes the risk of litigation if such mitigation efforts are unsuccessful; and risks federal funding to the airport. The scope of the potential harm here is considerably different than, for instance, a change in property values due to a zoning decision. *See, e.g., Sexton v. Jackson Cty. Bd. of Zoning Appeals*, 884 N.E.2d 889, 893-94 (Ind. Ct. App. 2008) (reversing trial court's denial of petition for writ of certiorari challenging special exception granted to build and operate a concentrated animal feeding operation, holding the appellants were aggrieved and had standing because they presented evidence that their property values would decrease). Rather, the potential damage here is damage to equipment; injury or loss of life to persons in aircraft or on the

ground; vulnerability to litigation should that damage occur; and loss of funding to a valuable business for the community. This, to me, demonstrates a "substantial grievance" with the Board's decision, the imposition of a burden or obligation, *and* a possible pecuniary injury unique to the Airport, its business, and its responsibilities.

[26] Thus, I would hold the Airport has demonstrated it has standing as "a person aggrieved" within the meaning of Indiana Code section 36-7-4-1603(a)(2), and I would reverse the trial court's decision granting summary judgment to the Board and the Applicants.